IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRUCE A. KIBE, )
        Plaintiff, )
)
  -vs- ) Civil Action No. 18-228
)
NANCY A. BERRYHILL, )
ACTING COMMISSIONER OF SOCIAL )
SECURITY, )
)
        Defendant. )

AMBROSE, Senior District Judge.

## OPINION AND ORDER

### Synopsis

Plaintiff Bruce A. Kibe ("Kibe") seeks judicial review of the Social Security Administration's denial of his claims for a period of disability and for disability insurance benefits ("DIB").[1] Kibe alleges a disability onset date of April 4, 2014. (R. 22). The ALJ denied his claim following a hearing at which both Kibe and a vocational expert ("VE") appeared and testified. Kibe then appealed. Before the Court are the parties' cross-motions for summary judgment. *See* ECF Docket Nos. 8 and 10. For the reasons set forth below, the ALJ's decision is affirmed.

### Opinion

1. Standard of Review

---

[1] The ALJ determined that Kibe met the insured status requirements of the Social Security Act through December 31, 2019. (R. 22)

1

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g)6 and 1383(c)(3)(7). Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. § 706. When reviewing a decision, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler*, 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979); *Richardson*, 402 U.S. at 390, 91 S. Ct. 1420.

Importantly, a district court cannot conduct a *de novo* review of the Commissioner's decision, or re-weigh the evidence of record; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F.Supp. 549, 552 (E.D. Pa.

2

1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196-7, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." *Brunson v. Astrue*, 2011 WL 2036692, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted).

 II. <u>The ALJ's Decision</u>

As stated above, the ALJ denied Kibe's claim for benefits. More specifically, at step one of the five step analysis, the ALJ found that Kibe had not engaged in substantial gainful activity since the application date. (R. 22) At step two, the ALJ concluded that Kibe suffers from the following severe impairments: learning disorder / borderline intellectual functioning; bipolar disorder; and schizoaffective disorder. (R. 22) At step three, the ALJ concluded that Kibe does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 22-24) Between steps three and four, the ALJ found that Kibe has the residual functional capacity ("RFC") to perform work at all exertional levels but that he has some non-exertional restrictions. (R. 24-27) At step four, the ALJ found that Kibe is unable to perform his past relevant work. (R. 27) Ultimately, at the fifth step of the analysis, the ALJ concluded that, considering Kibe's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (R. 28-29)

III. <u>Discussion</u>

(A) Intellectual Disability at Step Three

Kibe contends that the ALJ erred in failing to find that he meets the requirements of Listing 12.05(C). At step three, the ALJ is tasked with determining whether the claimant's impairments meet or equal the criteria listed in 20 C.F.R. Pt. 404, Subpt. P, Appx. 1. "If the impairment is equivalent to a listed impairment, then [the claimant] is *per se* disabled and no further analysis is necessary." *Burnett v. Comm'r. of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000). Listing 12.05 states, in relevant part:

> 12.05 Intellectual Disability: Intellectual disability refers to significantly subaverage general intellectual function with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports the onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> …
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function.
> …

20 C.F.R. § 404, Subpt. P, App. 1, 12.0 (2015).[2] Thus, to satisfy Part C, Kibe must have: (1) significantly subaverage intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period (i.e., before age 22); (2) a valid verbal, performance, or full-scale IQ of 60 through 70; and (3) a physical or mental impairment imposing an additional and significant work-related limitation or function. 20 C.F.R. § 404, Subpt. P, App. 1. To be found presumptively disabled, a

---

[2] On September 26, 2016, the SSA issued Revised Medical Criteria for Evaluating Mental Disorders, Final Rule, which amended listing 12.05. 81 Fed. Reg. 66138. See 2016 WL 5341732 (2016). The amendment does not impact this case. The Final Rule provides that "[w]e expect that Federal Courts will review our final decision using the rules that were in effect at the time we issued the decisions." *Id.*, at n. 1. The rule set forth above was in effect at the time the ALJ issued his decision.

4

plaintiff must meet all of the criteria of a Listing. 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). An impairment that meets only some of the criteria, "no matter how severely, does not qualify" for a *per se* disability determination. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Here, the ALJ found that Kibe failed to establish a valid verbal, performance, or full-scale IQ of 60 through 70. (R. 24) In so doing, the ALJ rejected Kibe's verbal comprehension score of 70 on testing performed in September of 2014 as failing to reflect Kibe's true cognitive abilities. (R. 24, 312) Although an ALJ "is not permitted to reject an IQ score based on his own speculative inferences and observations of the claimant," he may reject IQ scores that are inconsistent with the record as long as the basis for doing so is adequately explained. *See Schmidt v. Comm'r. of Soc. Sec.*, Civ. No. 12-690, 2013 WL 1386881, at * 1 n. 1 (W.D. Pa. April 4, 2013), *citing, Markle v. Barnhart*, 324 F.3d 182, 187 (3d Cir. 2003). *See also, Jones v. Colvin*, 2015 WL 3646313, at * 6 (W.D. Pa. June 10, 2015). Indeed, "[m]aking factual determinations on the validity of IQ scores is within the province of an ALJ." *Lax v. Astrue*, 489 F.3d 1080, 1086 (10th Cir. 2007). "In determining whether an IQ score is valid, i.e., an accurate reflection of a claimant's intellectual abilities, the ALJ is to consider the entire record before him." *Van Armburgh v. Colvin*, 2013 WL 5463774, at * 4 (W.D. Pa. Sept. 30, 2013) (*citing, Markle*, 324 F.3d at 186). "Test results may be deemed invalid where the IQ scores are inconsistent with the claimant's prior educational or work history, daily activities, behavior or other aspects of his or her life." *Id., quoting, Manigault v. Astrue*, 2009 WL 1181253 (W.D. Pa. 2009).

5

It is clear from the decision that the ALJ considered the record in its entirety and adequately explained why he did not accept the verbal IQ score of 70 as a true indication of Kibe's intellectual abilities. The ALJ stated that:

> [t]he undersigned notes that the claimant did have a standard score of 70 on the "Verbal Comprehension Index" on testing in September 2014. (Ex. 4F at 2). However, the consultative examiner only diagnosed borderline intellectual functioning based on his scores, rather than intellectual disability (Ex. 4F at 3). This score does not appear to reflect the claimant's true cognitive functioning based on the other evidence of his adaptive functioning, such as his ability to attend to his own personal care, independently attend treatment appointments, and his ability to read and write, as indicated per his testimony and his completion of disability-related forms. He was able to perform substantial gainful activity for a number of years (Exhibit 2D), thus displaying better adaptive functioning than his IQ scores alone would suggest. The consultative examiner also found that he was "considered able to manage personal funds in a competent manner independently" (Ex. 4F at 3).

(R. 24) Additionally, his decision to reject the verbal IQ score as "inconsistent with the claimant's prior educational or work history, daily activities, behavior or other aspects of his or her life," *Manigault v. Astrue,* 2009 WL 1181253 (W.D. Pa. 2009), is supported by substantial evidence of record. As the ALJ noted, Dr. Newman himself gave a diagnosis of borderline intellectual functioning based upon those scores. (R. 313) Further, he also expressed, with 95% confidence, that Kibe's range of scores would be from 71 to 80. (R. 312) Similarly, Dr. Newman opined that Kibe was able to manage his personal funds in a competent manner. (R. 24, citing, 313) Moreover, Kibe was able to "attend to his own personal care, independently attend treatment appointments, … read and write, as indicated per his testimony and his completion of disability-related forms[,] … [and] perform substantial gainful activity for a number of years." (R. 24) Consequently, I see no basis for remand on this issue.[3]

---

[3] As such, I need not address Kibe's other contentions regarding 12.05.

(B) Hypothetical Questions

"A hypothetical question must include all of the claimant's 'credibly established limitations.'" *Sammons v. Comm'r. of Soc. Sec.*, Civ. No. 17-1368, 2019 WL 1091388, at * 3 (D. Del. March 8, 2019, *quoting, Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). *See also, Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). "Thus, a limitation supported by medical evidence, and 'otherwise uncontroverted in the record,' must be included in the hypothetical." *Sammons*, 2019 WL 1091388, at * 3, *quoting, Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014). "'However, where a limitation is supported by medical evidence, but is opposed by other evidence in the record, the ALJ has discretion to choose whether to include that limitation in the hypothetical.'" *Id., quoting, Zirnsak*, 777 F.3d at 615. "[A]n ALJ is only required to accept testimony from a vocational expert which accurately reflects a plaintiff's limitations." *Rodriguez v. Berryhill*, Civ. No. 17-6884, 2019 WL 1013343, at * 11 (D. N.H. March 1, 2019) (citations omitted). "Accordingly, '[w]hen a hypothetical meets that requirement, and is supported by substantial evidence, expert vocational testimony suffices as substantial evidence supporting a Step 5 finding.'" *Rodriguez*, 2019 WL 1013343, at * 11 (citations omitted).

Here, in one exchange with the VE, the ALJ queried whether an individual of a certain age, education, work experience and with particular limitations, who "got into verbal or physical altercations with coworkers occasionally," would be able to sustain full-time, competitive employment. (R. 51) The VE responded that the claimant would not. (R. 61) Kibe insists that "[t]his ALJ hypothetical question and the vocational expert's

7

response constitutes substantial evidence," suggesting that the ALJ therefore erred in failing to find him disabled. *See* ECF Docket No. 9, p. 24. I disagree. First, the question before me is not "whether substantial evidence supports Plaintiff's claims, or whether there is evidence that is inconsistent with the ALJ's findings…. Substantial evidence could support both Plaintiff's claims and the ALJ's findings because substantial evidence is less than a preponderance." *Hundley v. Colvin*, 2016 WL 6647913, * 2 (W.D. Pa. Nov. 10, 2016), *citing, Jesurum v. Sec'y. of U.S. Dep't. of Health & Human Services,* 48 F.3d 114, 117 (3d Cir. 1995). Second, an ALJ is only required to accept the responses that accurately reflect a claimant's impairments. *See Podedworny v. Harris*, 754 F.2d 201, 218 (3d Cir. 1984); and *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). Here, the ALJ rejected the notion that Kibe had marked limitations interacting appropriately with co-workers. (R. 27) He found that the limitation seemed to be based upon Kibe's "subjective report of his past work history" and that the examiner in fact described Kibe as "cooperative and basically friendly." (R. 27) The ALJ's decision in this regard is supported by substantial evidence and I find no error in the ALJ's decision not to accept the VE's response in fashioning the RFC.

Kibe also contends that the ALJ's hypothetical to the VE did not adequately account for his moderate difficulties in concentration, persistence or pace. Again, I disagree. The ALJ limited Kibe, in part, to:

> routine, repetitive tasks of SVP 1 or 2. He requires a static, low stress work environment that involves simple decisions, simple to no math or reading, and infrequent changes, with changes that do occur explained and / or demonstrated and could be learned in 30 days or less. Any work he attempts must not be fast-paced or have strict production requirement quotas.

(R. 24) Kibe cites to the court's decision in *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2002), for the proposition that the hypothetical the ALJ posed to the VE was deficient. Yet here, unlike in *Ramirez*, the ALJ did include "pace" restrictions in the hypothetical. (R. 59-60) The resulting RFC similarly precludes fast-paced work and any jobs with strict production requirement quotas. (R. 24) As such, I do not find the *Ramirez* decision to be on point. Rather, given the facts at issue here, I find more analogous those decisions where courts have found that limitations to "simple, routine tasks" appropriately account for moderate limitations in concentration, persistence or pace. *See Rodriguez*, 2019 WL 1013343 at * 12; *Menkes v. Astrue*, 262 Fed. Appx. 410, 412-13 (3d Cir. 2008) (nonprecedential) (stating that "performing a 'simple, routine task' typically involves low stress level work that does not require maintaining sustained concentration"); *Pimentel v. Berryhill*, Civ. No. 15-2061, 2017 WL 4284559, at * 3 (M.D. Pa. Sept. 27, 2017); and *Moon v. Berryhill*, Civ. No. 18-323, 2018 WL 7002038, at * 8 (M.D. Pa. Dec. 19, 2018) (stating that "case law in this circuit makes clear that a restriction limiting an individual, e.g., to simple, routine tasks or unskilled work, is sufficient to accommodate moderate limitations in concentration, persistence and pace.")(internal quotation marks and citations omitted). Consequently, this issue does not present a basis for remand.

    (C) Physician Reports

    Finally, Kibe takes issue with the ALJ's evaluation of medical opinions. Both Dr. Santilli and Dr. Last proffered opinions on Kibe's impairments. Santilli is a state agency psychologist. She rendered her opinion in September of 2014, approximately three months before Kibe began treating with Last. Santilli determined that Kibe suffered from

borderline intellectual functioning and bipolar / affective disorders. (R. 65, 68) She opined that he had mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation. (R. 68) She further explained that:

> The claimant's ability to understand and remember complex or detailed instructions is limited, however, he would be expected to understand and remember simple, one and two-step instructions. He is able to carry out very short and simple instructions. He is able to maintain concentration and attention for extended periods of time. He would not require special supervision in order to sustain a work routine. He is capable of asking simple questions and accepting instruction and is self-sufficient. He could function in production oriented jobs requiring little independent decision making. The claimant has some problems dealing with stress and public contact. He retains the ability to perform repetitive work activities without constant supervision. Based on the evidence of record, the claimant's statements are found to be partially credible.

(R. 71) The ALJ gave Santilli's opinion "great weight." (R. 26) The ALJ explained that "the consultant has expertise in mental impairments and social security disability program knowledge, and she has had the opportunity to examine the claimant's longitudinal psychiatric history, which does not support the limitations in psychological functioning alleged." (R. 26)

Kibe contends that the ALJ erred in giving great weight to Santilli's opinion because her opinion was "stale." Given that her opinion was rendered before Last authored his opinion declaring that Kibe suffered from schizoaffective disorder, Kibe reasons, Santilli did not have the benefit of such a diagnosis nor was she able to consider the medical records supporting the same. As such, he urges, the ALJ erred in giving Santilli's opinion relatively greater weight than Last's. Certainly "ALJs may not rely on outdated opinions of agency consultants 'if later evidence containing new,

10

significant medical diagnoses reasonably could have changed the reviewing physician's opinion.'" Lambert v. Berryhill, 896 F.3d 768, 776 (7th Cir. 2018), citing, Moreno v. Berryhill, 882 F.3d 722, 728 (7th Cir. 2018). See also, Stage v. Colvin, 812 F.3d 1121, 1125 (7th Cir. 2016) (remanding where a claimant's subsequent diagnostic report "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment").

Nevertheless, I reject Kibe's contentions. First, as the Government urges, "because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision." Chandler v. Comm'r. of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). As the Third Circuit Court states, "[t]he Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it." Chandler, 667 F.3d at 361.

Second, Kibe's argument is based upon the contention that Last's opinion contains "new, significant medical diagnoses" which reasonably could have changed Santilli's opinion. See ECF Docket No. 9, p. 18. Yet Last does not introduce a new medical diagnosis. He states that the initial diagnosis is "schizoaffective d/o bipolar type." (R. 345) Santilli recorded that Kibe suffered from, among other things, bipolar disorder. (R. 65, 68) Third, Last's report, in which he declares Kibe is "100% permanently disabled," is not entitled to any weight. (R. 347) As the ALJ observed, a finding of disability is an issue reserved for the Commissioner and a treating source opinion on this issue is not entitled to any deference. See 20 C.F.R. § 404.1527(d)(2); SSR 96-5p. Fourth, as the ALJ observed, Last's opinion also: lacks supportive reasoning; is internally inconsistent; and it is not supported by the treatment records and

consultative examination findings. (R. 27) For instance, Last actually remarked that Kibe's prognosis is "fair." (R. 346) He also explained that there were no complications necessitating additional or more frequent care and detailed that "future care" will consists of "medicine checks." (R. 346) The medical records show that Kibe consistently presented with "good" grooming, "good" eye contact, "normal" speech, "fine" mood, "appropriate" affect, "coherent and goal directed" thought process, and without hallucinations, delusions or obsessive thoughts. (R. 339, 40, 41, 42, 43, 44) As such, substantial evidence supports the ALJ's decision to give "little weight" to Last's declaration of "100% permanent disability."

Nor was it erroneous for the ALJ to give "little weight" to the Mental Impairment Questionnaire which Last completed. (R. 348-354) The ALJ explained that "such a severity of limitation is not reflected in the claimant's treatment history or the treatment notes." (R. 27) The ALJ noted that, "just months earlier," Last had noted improvement with an increase in Thorazine and that, upon examination, Kibe had displayed "good grooming, good eye contact, normal speech, 'fine' mood, appropriate and full range affect, reported no hallucinations or delusions, and his cognition was grossly intact." (R. 27) Last's three month recommended follow up the ALJ found to be inconsistent with his opinion "that the claimant had poor or no ability to deal with the public or behave in an emotionally stable manner." (R. 27) The ALJ also found medication checks only once every three months to be inconsistent with the level of care recommended by Last. (R. 27) Again, the ALJ's findings in this regard are supported by substantial evidence of record. As stated above, a district court cannot conduct a de novo review of the Commissioner' decision. "I may not weigh the evidence or substitute my own conclusion

for that of the ALJ." *Brunson v. Astrue*, 2011 WL 2036692, (E.D. Pa. April 14, 2011). Here, the ALJ's decision to give more weight to Dr. Santilli's opinion than to that of Dr. Last is in accordance with the law and is supported by substantial evidence of record. As such, there is no basis for remand.

.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRUCE A. KIBE | ) | |
|     Plaintiff, | ) | |
| | ) | |
|   -vs- | ) | Civil Action No. 18-228 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
|     Defendant. | ) | |

AMBROSE, Senior District Judge.

## **ORDER OF COURT**

Therefore, this 15th day of March, 2019, it is hereby ORDERED that the Plaintiff's Motion for Summary Judgment (Docket No. 8) is DENIED and the Defendant's Motion for Summary Judgment (Docket No. 10) is GRANTED. It is further ORDERED that the ALJ's decision is AFFIRMED. This case shall be marked "Closed" forthwith.

                                              BY THE COURT:

                                              /s/ Donetta W. Ambrose
                                              Donetta W. Ambrose
                                              United States Senior District Judge